IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ERSKINE J. WARE,
          Petitioner,

vs.                                                    Case No.:  3:12cv524/LAC/EMT

MICHAEL D. CREWS,
          Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 10).  Petitioner filed a reply (doc. 16).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 10).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2004-CF-0513, with one count of trafficking in illegal drugs (4 grams or more, but

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 10).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

less than 14 grams, of hydrocodone) (Ex. C at 3). Following a jury trial, he was found guilty as charged (Ex. C at 29, Ex. D). On January 26, 2005, Petitioner was sentenced to a mandatory term of thirty-six (36) months of imprisonment, with pre-sentence jail credit of 364 days, followed by a period of ten (10) years of probation (Ex. C at 34–40, 67–71).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D05-693 (Ex. E). The First DCA affirmed the judgment per curiam without written opinion on April 4, 2006, with the mandate issuing April 20, 2006 (Exs. G, H). Ware v. State, 926 So. 2d 1278 (Fla. 1st DCA 2006) (Table). Petitioner did not seek further review.

On November 3, 2006, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D06-4977, alleging ineffective assistance of appellate counsel (Ex. I). The First DCA denied the petition on the merits on November 22, 2006, and denied Petitioner's motion for rehearing on January 12, 2007 (Exs. J, K, L). Ware v. State, 946 So. 2d 38 (Fla. 1st DCA 2006) (Mem).

On April 25, 2007, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–23). The state circuit court held a limited evidentiary hearing on one of Petitioner's claims, and appointed counsel to represent Petitioner (*id.* at 70–71, 85–130). In an order rendered January 20, 2009, the court denied the Rule 3.850 motion (*id.* at 131–45). Petitioner appealed the decision to the First DCA, Case No. 1D09-1915 (*see* Exs. M, O).[2] The First DCA dismissed the appeal on December 22, 2009 (Exs. M, P).

On November 13, 2007, Petitioner filed a second petition for writ of habeas corpus in the First DCA, Case No. 1D07-4968, alleging ineffective assistance of appellate counsel on direct appeal of his conviction (Ex. Q). The First DCA dismissed the petition on October 17, 2007, and denied Petitioner's motion for rehearing on January 12, 2007 (Ex. R). Ware v. State, 967 So. 2d 204 (Fla. 1st DCA 2007) (Table).

On April 21, 2010, the Florida Department of Corrections ("FDOC") filed an affidavit of violation of probation ("VOP"), which was subsequently amended (Ex. T at 1–3, 13–14). Petitioner

---

[2] After Petitioner filed his notice of appeal, he filed a petition for writ of mandamus in the state circuit court (*see* Ex. A, docket entry 03/06/2009). The court dismissed the petition without prejudice (*id.*, docket entry 04/24/2009). Petitioner appealed the decision to the First DCA, Case No. 1D09-2794 (*id.*, docket entry 05/26/2009). The First DCA affirmed per curiam without written opinion, with the mandate issuing June 10, 2011. Ware v. State, 61 So. 3d 1120 (Fla. 1st DCA 2011) (Table).

was additionally charged with grand theft in a new criminal case, Case No. 2010-CF-2200 ("new law violation"). On July 7, 2010, Petitioner pleaded nolo contendere, pursuant to a written plea agreement, to the VOP and the new law violation (*id.* at 28–59). The trial court revoked his probation and adjudicated him guilty of the new law violation (*id.* at 36–38, 51, 64). Petitioner was sentenced to eighty-four (84) months in prison on the VOP, with credit for time served of 53 days, and a concurrent term of sixty (60) months in prison on the new law violation, with credit for 53 days plus credit for the time he previously served in the FDOC (*id.*).

Petitioner appealed the judgment to the First DCA, Case No. 1D10-4439 (Ex. T at 65). The First DCA dismissed the appeal on October 14, 2010 (Ex. U), but then granted Petitioner's motion to reinstate the appeal (Exs. S, V, W). Prior to filing an initial brief, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(b)(2) of the Florida Rules of Criminal Procedure (Ex. Z at 74–78). The state circuit court struck the motion as facially insufficient without prejudice to Petitioner's filing an amended motion within "a reasonable time" (*id.* at 90–91). Petitioner filed an amended motion (*id.* at 92–95). The circuit court denied it on October 18, 2011 (*id.* at 96–97). Petitioner then proceeded in his direct appeal. Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. X). Petitioner filed a pro se initial brief (Ex. Y). The First DCA affirmed per curiam without written opinion on March 5, 2012, with the mandate issuing April 2, 2012 (Exs. AA, BB). Ware v. State, 83 So. 3d 717 (Fla. 1st DCA 2012) (Table). Petitioner sought certiorari review in the Florida Supreme Court, but the court dismissed the petition for lack of jurisdiction (Ex. S). Ware v. State, 88 So. 3d 151 (Fla. 2012) (Table).

On March 5, 2012, Petitioner filed a motion to correct illegal sentence in the state circuit court (Ex. A, docket entry 03/05/2012). The court granted the motion only to the extent the judgment of conviction and sentence was corrected to reflect that Petitioner was granted credit on his sentence in the Case No. 2010-CF-220 for all the time he had served in Case No. 2004-CF-513, including his original jail credit of 364 days and time served in the DOC, in addition to 53 days of sentence credit (*id.*, docket entry 06/04/2012). Petitioner appealed the decision to the First DCA, Case No. 1D12-4316. The First DCA affirmed per curiam without written opinion on May 13, 2013, with the mandate issuing June 10, 2013. Ware v. State, No. 1D12-4316, 2013 WL 1953520, at *1 (Fla. 1st DCA 2013)

(unpublished).  Petitioner filed the instant federal habeas action on October 31, 2012, during the pendency of that appeal (doc. 1).  Respondent does not assert a statute of limitations defense.

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

  If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding

that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court. Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982). In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury

---

[4] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
      (A) the applicant has exhausted the remedies available in the courts of the State; or
      (B) (i) there is an absence of available State corrective process; or
         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364. The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a

---

[5] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement. After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach. For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and

---

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state

court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined

with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The

adequacy requirement has been interpreted to mean the rule must be firmly established and regularly

followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

        To overcome a procedural default such that the federal habeas court may consider the merits

of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a

fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist,

an external impediment, whether it be governmental interference or the reasonable unavailability of

the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v.

Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier,

477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of

justice exception, the petitioner must show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130

L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more

likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent
> person is extremely rare.  To be credible, such a claim requires [a] petitioner to
> support his allegations of constitutional error with new reliable evidence—whether
> it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical
> physical evidence—that was not presented at trial.

*Id.*  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove

diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a

petitioner's proof of innocence.  *See* McQuiggin v. Perkins, — S.Ct. —, No. 12-126, 2013 WL

2300806, at *11 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the

submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of .

. . evidence [of actual innocence]."  513 U.S. at 332; *see also* House, 547 U.S. at 537.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim
on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir.
1994).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

> Ground One: "Petitioner alleged that counsel violated his constitutional guarantee to effective assistance of counsel."

> Ground Three:  "Counsel provided ineffective assistance of counsel by failing to impeach State's witness."[8]

In Ground One, Petitioner alleges he provided defense counsel with the names, addresses, and content of potential testimony of several witnesses, but defense counsel failed to present their testimony at trial (doc. 1 at 5).[9]  Petitioner contends their testimony would have supported an entrapment defense, and the outcome of his trial would have been different had counsel presented their testimony (*id.*).  In Ground Three, he argues defense counsel was ineffective for failing to impeach one of the State's witnesses (*id.* at 6).  Petitioner states he raised both of these claims in his Rule 3.850 motion (*id.* at 5–6).

Respondent did not address either of these claims in his answer to the petition (*see* doc. 10).  Respondent also did not expressly waive the exhaustion requirement, and affirmatively asserted "all available procedural bars" (*id.* at 1).  The State is thus not deemed to have waived the exhaustion requirement.  *See* 28 U.S.C. § 2254(b)(3).

The state court record demonstrates that Petitioner did not properly exhaust either of these claims.  He raised the claims as Grounds 1 and 2 in his Rule 3.850 motion (Ex. N at 5–12).  The state circuit court held an evidentiary hearing on Ground 1 and appointed counsel to represent Petitioner (*id.* at 85–130).  The court denied both claims in an ordered rendered January 20, 2009 (*id.* at 131–45).  Petitioner filed a notice of appeal (*id.* at 228), and the First DCA assigned Case No. 1D09-1915 (Ex. M).  Petitioner was not represented by counsel on appeal (Ex. N at 231–32).  On November 25, 2009, the appellate court issued an order directing Petitioner to either file an initial brief within twenty (20) days or show cause why the appeal should not be dismissed for failure to obey the rules

---

[8] The court consolidated Grounds One and Three for organizational purposes.

[9] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system.

Case No.:  3:12cv524/LAC/EMT

and orders of the court (Ex. O). On December 22, 2009, the appellate court dismissed the appeal for Petitioner's failure to respond to the November 25 order (Ex. P).

The Florida Rules of Appellate Procedure provide that when a Rule 3.850 motion is granted or denied after an evidentiary hearing, the appellant must file an initial brief within thirty (30) days of service of the record or its index. Fla. R. App. P. 9.141(b); *see also* Pennington v. State, 34 So. 3d 151, 153 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion). When a defendant receives an evidentiary hearing on any postconviction claim, he must present argument on all issues for which he seeks appellate review in his initial brief, regardless of whether the claim was summarily denied or litigated at the evidentiary hearing. *See* Prince v. State, 40 So. 3d 11 (Fla. 4th DCA 2010); Hammond v. State, 34 So. 3d 58 (Fla. 4th DCA 2010) (claim for which appellant did not present argument, or for which he provided only conclusory argument, was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied by trial court); Williams v. State, 24 So. 3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his postconviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief). Petitioner received an evidentiary hearing, so he was required to file an initial brief and raise and fully address the merits of all issues he wished to preserve for appellate review.

In this case, the record and its index were filed in the First DCA on April 22, 2009 (Ex. M). Petitioner did not file an initial brief within thirty days of that date, nor did he respond to the First DCA's show cause order directing him to file a brief or show cause why the appeal should not be dismissed (Exs. M, O, P). The First DCA dismissed the appeal, pursuant to the Rule 9.410(a) of the Florida Rules of Appellate Procedure, which is a firmly established and regularly followed rule providing that after ten (10) days' notice the court may, on its own motion, impose sanctions, including dismissal of the proceeding, for any violation of the appellate rules (Exs. O, P).

In Petitioner's reply, he argues the First DCA reinstated his appeal, and he then sought review by the Florida Supreme Court, but the court denied review on April 12, 2012 (doc. 16 at 2). Petitioner confuses the appeal in the Rule 3.850 proceeding, First DCA Case No. 1D09-1915, with the direct appeal of the judgment and sentence in the VOP and new law violation cases, First DCA

Case No. 1D10-4439 (Exs. S, T at 65, U, V, W, AA, BB). Although the First DCA reinstated the Petitioner's appeal in the direct appeal, it did not do so in the postconviction proceeding. Therefore, Petitioner procedurally defaulted his ineffective assistance of counsel claims.

Petitioner also appears to rely on <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012) to overcome the procedural bar (doc. 16 at 4). In <u>Martinez v. Ryan</u>, — U.S. —, 132 S. Ct. 1309, 1320, 182 L. Ed. 2d 272 (2012), the Supreme Court held that ineffective assistance of counsel can constitute cause of a procedural default in an initial-review collateral proceeding, but not in an appeal from an initial-review collateral proceeding. Here, the procedural default occurred in the postconviction appeal, not the initial-review proceeding. Further, Petitioner was represented by counsel in the initial-review proceeding. Therefore, <u>Martinez</u> provides Petitioner no relief from the procedural bar.

Additionally, Petitioner's allegations do not suggest he is entitled to review under the fundamental miscarriage of justice exception. As previously discussed, to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent, Petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of new reliable evidence that was not presented at trial. <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Here, Petitioner has made no showing that the four potential defense witnesses he contends defense counsel should have called would have supported his entrapment defense. In Ground 1 of Petitioner's Rule 3.850 motion, he argued Patricia Springer, Robert Meadows, Jamie Hughes, and Officer Tom Volner would have provided testimony to support his entrapment defense (Ex. N at 5–8, 36–37). He alleged they would have testified as follows:

> Patricia Spring[er], located in Pensacola, Florida was available to testify and would have testified that defendant was not actively seeking to sell drugs and that she was in trouble and needed help. Mrs. Springer would have testified that her husband is incarcerated and that she was in danger of losing her children for neglect. Mrs. Springer would have testified that defendant is not a drug dealer, but was someone

attempting to help her in her time of need, and that she solicited defendant[']s help in setting up a sting operation for law enforcement.

Robert Meadows, located in Pensacola, Fl was available to testify and would have testified that he was the one actively attempting too [sic] sell his pills. Mr. Meadows would testify that the phone cal [sic] to set up the transaction was made from Patricia Springer's home and that she allowed him to talk with the officer. Mr. Meadows will testify that his deposition was taken and this is what he shared with the state and defense counsel. Mr. Meadows could testify that he did not see the Defendant get any Miranda rights read to him.

Jamie Hughes, located in Pensacola, FL, was available to testify and would have testified that the phone call to set up the drug transaction was made from Patricia Springer's home. Ms. Hughes will testify that she did not witness any Miranda rights being given to the Defendant.

Witness Officer Tom Volner, located in Pensacola, FL, was available to testify and would have testified that the Defendant advised him of his justification for being involved in the offense and that he was told that Patricia Springer acting for law enforcement solicited his help. Mr. Volner would have testified that he never read Defendant his Miranda rights and transported Defendant back to his car and released him. Further, Mr. Volner could testify that he was informed by Defendant that he was in the Friary and knew Defendant's whereabouts after the alleged offense, and that Defendant signed an "amnesty" agreement and contact sheet.

(Ex. N at 36–37).

At the state court evidentiary hearing, Petitioner testified he "recreationally" used drugs with Patricia Springer (Ex. N at 89–91). He testified that on the night of the offense, October 30, 2004, Springer asked him to assist her with a controlled buy, and he told her he would have to think about it (*id.*). He testified Robert Meadows and Jamie Hughes were at Springer's house that evening, and wanted to know if somebody wanted to buy Lortabs from them (*id.* at 93). Petitioner testified Springer spoke with a man on the telephone and then told Petitioner she had talked to a man who wished to buy the drugs (*id.* at 89–95). Petitioner testified he also spoke with the man (who was Officer Scott Allday) and arranged a place to meet to conduct the drug sale (*id.*). Petitioner testified he went to the arranged location, got into the man's car, and gave him the drugs (*id.* at 93–94). Petitioner testified he was arrested, and "everyone" was taken to the police station (*id.* at 92, 97). He testified an officer asked if he would be willing to become a confidential informant, and he agreed (*id.* at 92).

Petitioner's defense counsel, Kelly Richards, testified she deposed Robert Meadows, and determined he could not provide any testimony helpful to Petitioner's defense (Ex. N at 102). She testified Meadows stated in his deposition that he had pills prescribed by his doctor; he became involved with a woman, Jamie Hughes, who used drugs; and the woman convinced him to sell the pills to make money (*id.* at 102–03). Attorney Richards testified that based on this deposition testimony, "there was never and would never have been a reason to call Mr. Meadows" (*id.* at 103). She testified she communicated this to Petitioner, and he did not insist she call Meadows (*id.*). Attorney Richards testified she served Jamie Hughes with a subpoena for deposition, but Hughes did not appear, and no one, including the State, was able to locate her (*id.* at 103–04). Richards testified Petitioner believed that Officer Tom Volner was the officer with whom he agreed to work as a confidential informant <u>after</u> his arrest on October 30, 2004 (*id.* at 105). Ms. Richards testified Officer Volner was present at Petitioner's trial, and she talked with him to determine whether there was anything he could say to that would be helpful to Petitioner (*id.*). She testified that after speaking with him, she determined he would not be helpful to the defense (*id.*). Ms. Richards testified she discussed this with Petitioner, and they jointly determined not to call him (*id.*).

Richard Wallace, Attorney Richards' investigator, testified Ms. Richards asked him to interview Patricia Springer (Ex. N at 114). He testified he spoke with Ms. Springer on the telephone, and she stated she knew Petitioner, but she denied working as a confidential informant with law enforcement at the time of Petitioner's arrest, and she denied Petitioner ever assisted her in working as a confidential informant (*id.* at 115).

Officer Scott Allday testified that prior to October 30, 2004, Petitioner was not working with law enforcement as a confidential informant. (Ex. N at 118–19). He testified he was the man who arranged the drug buy with Petitioner that night (*id.* at 119). Allday verified that Patricia Springer was working as a confidential informant that night (*id.* at 120).

At Petitioner's trial, Petitioner testified that at the time of the drug transaction, he believed he was working with law enforcement to help a friend in need (Ex. D at 62–70). He testified that after he was arrested and taken to the police station, he agreed to continue to work as a confidential informant (*id.* at 70). He testified that Officer Volner subsequently asked him to work with Officer Allday, and he worked on one case with him, but then they had a falling out (*id.* at 70–72).

The offense of trafficking in hydrocodone, a violation of Florida Statutes § 893.135(1)(c)1.a. includes four elements: (1) the defendant knowingly sold, delivered, or possessed a certain substance; (2) the substance was hydrocodone; (3) the quantity was more than 4 grams but less than 14 grams; and (4) the defendant knew that the substance was hydrocodone (Ex. N at 135). *See* Fla. Stat. § 893.135(1)(c)1.a.; Fla. Standard Jury Instruction in Criminal Cases § 25.11 Trafficking in Illegal Drugs.

Petitioner failed to show that any of the uncalled witnesses would have provided testimony helpful to the defense (either because it would have cast doubt on an element of the offense or supported an affirmative defense), let alone that it is more likely than not that no reasonable juror would have convicted him in light of the testimony of any or all of them. Petitioner thus failed to show he is entitled to review of his procedurally defaulted claims through the fundamental miscarriage of justice portal.

It is clear from the record that Petitioner procedurally defaulted Grounds One and Three in the state courts. He failed to show he is entitled to federal review of his claims through any recognized exception to the procedural bar. Therefore, he is not entitled to habeas relief on Grounds One and Three.

B.    Ground Two: "Florida Drug Trafficking Statute is unconstitutional and violates due process. Petitioner had no intent."

Petitioner alleges he testified at trial that the person who involved him in the offense asked him for assistance, but police officers were not present during this conversation (doc. 1 at 5). He argues that the Eleventh Circuit, in Shelton v. Sec'y, Dep't of Corr., 691 F.3d 1348 (11th Cir. 2012), determined that the statute he was convicted of violating was unconstitutional at the time of his conviction, and after Shelton, the Florida Legislature amended the statute to render it constitutional (*id.* at 7; *see also* doc. 16 at 6–7). Petitioner states he raised this claim in a Rule 3.800(b)(2) motion and on appeal of the trial court's denial of the motion (doc. 1 at 6, 8–38).

Respondent contends Shelton demonstrates that Petitioner is not entitled to relief, because at the time the state court rejected Petitioner's claim, there was no clearly established federal law establishing a due process violation where a state criminal statute does not include a specific intent element (doc. 10 at 7–9).

In Petitioner's Rule 3.800(b)(c) motion, he argued that by virtue of Florida's drug trafficking statute, his offense was a "strict liability offense"; therefore, imposition of felony punishment for his drug trafficking offense was unconstitutional under the federal and state law (Ex. Z at 92–94). As relief, he sought correction of his sentence (*id.*). The state circuit court denied the motion (*id.* at 96–97). On appeal to the First DCA, Petitioner raised facial and as-applied constitutional challenges to Florida's drug trafficking statute, arguing that the statute classified "strict liability offenses" as felonies (Ex. Y). The First DCA affirmed the lower court without written opinion (Ex. AA).

Shelton provides Petitioner no relief. In Shelton, the Eleventh Circuit determined that there was no Supreme Court precedent clearly establishing that the Due Process Clause forbids the partial elimination of mens rea as an element of crimes analogous to those in Florida's Drug Abuse Prevention and Control Act, Florida Statutes Chp. 893. Shelton, 691 F.3d at 1353, 1355. Therefore, Petitioner failed to show he is entitled to habeas relief on Ground Two. *See* 28 U.S.C. § 2254(d).

C.    New Claims Asserted in Reply

In the "Conclusion" section of Petitioner's reply, he argues that the Florida Department of Corrections ("DOC") is detaining him beyond his "85% release date," as provided in Florida Statutes § 944.275 (doc. 16 at 7–10, 12). He attaches a sentence calculation from the DOC showing his "85% release date" is August 23, 2012, but the DOC calculated his "tentative release date" as January 31, 2014, because the DOC forfeited 119 of previously earned gain time upon his return to prison for the VOP (*id.* at 12). Petitioner contends he exhausted the sentence credit issue in the Circuit Court in and for Leon County, Case No. 2012-CA-1194 (*id.* at 8). He also contends the DOC's forfeiture of his gain time thwarted the intent of his plea agreement (*id.*). He alleges he filed a motion to enforce the plea agreement, or allow him to withdraw his plea, in the trial court in Escambia County, and that motion is still pending (*id.* at 8, 13–14).

Petitioner did not raise either of these claims in his federal petition; rather, he asserted them for the first time in his reply brief. Therefore, he did not properly raise either claim. Furthermore, Petitioner could not amend his petition "as a matter of course" by including these additional claims in his reply because more than 21 days elapsed between the time Respondent served its answer (on April 12, 2013) and Petitioner filed his reply (on June 6, 2013). *See* Fed. R. Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" either 21 days after serving it, or 21

days after service of a responsive pleading; in all other cases, a party may amend its pleading only with the opposing party's written consent of the court's leave); Rule 11 of the Rules Governing Section 2254 Proceedings (district court may apply the Federal Rules of Civil Procedure consistent with the Rules Governing Section 2254 Proceedings). Moreover, Petitioner did not seek leave of court to amend his petition, and the undersigned does not construe Petitioner's reply as a request to amend, because Petitioner expressly stated his intent that the document be deemed a reply to Respondent's answer, and nowhere in the document does Petitioner mention a desire or intent to amend his petition or add new claims (*see* doc. 16). Therefore, the two additional claims are not properly before this court, and the court should exercise its discretion to refuse to consider them. *See* Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005) (because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it); United States v. Barrett, 178 F.3d 34, 46 n.6 (1st Cir. 1999); Jackson v. Duckworth, 112 F.3d 878, 880 (7th Cir. 1997); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (traverse is not proper pleading to raise additional grounds for relief; in order for state to be properly advised of additional claims, they should be raised in amended petition or statement of additional claim); *see also* Thompkins v. McKune, 433 F. App'x (10th Cir. 2011) (unpublished) (arguments raised for the first time in a traverse are not properly presented to the district court); Jamison v. Rice, 122 F.3d 1071 (9th Cir. 1997) (unpublished) (same); Thomas v. McNeil, No. 4:07cv473/MMP/EMT, 2010 WL 3491158, at *5 (N.D. Fla. July 30, 2010) (unpublished), *Report and Recommendation Adopted*, 2010 WL 3491156, at *5 (N.D. Fla. Sept. 2, 2010); Klauer v. McNeil, No. 3:07cv541/LAC/EMT, 2009 WL 2399928, at *30 (N.D. Fla. July 31, 2009) (unpublished); Cleckler v. McNeil, No. 3:07cv283/MCR/EMT, 2009 WL 700828, at * 11 n.4 (N.D. Fla. Mar. 16, 2009) (unpublished). Although some courts have recognized an exception to this rule of refusing to consider claims that are not properly presented if "the issue has been briefed fully on the merits [so that] the government will not be prejudiced if [the court] consider[s] it," *see* United States v. Allen, 157 F.3d 661, 667 (9th Cir. 1998) (citation omitted), here, Respondent did not brief the issue of Petitioner's additional claims. Therefore, the court should decline to address the two additional claims improperly brought in Petitioner's reply.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 20th day of June 2013.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**